UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

ALICE JACKSON,

        *Plaintiff*,

    v.

OMNIPLEX WORLD SERVICES
CORPORATION,

        *Defendant.*

No. 20-cv-0220 (DLF)

---

**MEMORANDUM OPINION AND ORDER**

Alice Jackson brings this lawsuit against her former employer, Omniplex World Services Corporation (Omniplex), asserting that it subjected her to a hostile work environment and discriminated against her based on her age and sex, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–2000e-17 ("Title VII"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 ("ADEA"). Dkt. 1 (Compl.). Before the Court is Omniplex's Motion to Dismiss. Dkt. 7 (Def.'s Mot. to Dismiss). For the reasons that follow, the Court will grant the motion.

**I. BACKGROUND**[1]

On July 7, 2014, Omniplex hired Alice Jackson, a 60-year-old female, to work as an Armed Special Police Officer at the Federal Communications Commission. Compl. ¶¶ 11–12. Jackson alleges that in mid-March 2015 her male co-workers discriminated against and harassed

---

[1] Unless otherwise noted, the factual allegations cited in this opinion are drawn from Jackson's complaint. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (court considering motion to dismiss must "accept all the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences from those allegations in the plaintiff's favor").

her in various ways.   For instance, on or around March 18, 2015, three younger, male colleagues surrounded Jackson at her post, pushed her, accused her of lying, and threatened to strike her.  *Id.* ¶¶ 18–23.  They also ridiculed the role of women in the workplace by saying things like "women don't know their place" and that "women shouldn't be allowed to work." *Id.* ¶ 19.  Afterwards, Jackson reported the incident, and her supervisors sent her home for the day.  *Id.* ¶¶ 24–31.

When Jackson returned for her next shift on or around March 20, her project manager informed her that Omniplex had indefinitely suspended her.  *Id.* ¶ 33.  Although Jackson repeatedly sought to return to work, Omniplex never responded to her requests or sent her a termination notice.  *Id.* ¶¶ 34–35.  After Jackson applied for unemployment benefits, she learned that Omniplex had permanently terminated her.  *Id.* ¶ 36.

Jackson filed a "charge of discrimination" with the District of Columbia Office of Human Rights on February 25, 2016.  Dkt. 9-1 (Questionnaire) at 2–3; Dkt. 7-2 (Notice) at 1.  On October 5, 2016, the D.C. Office of Human Rights cross-filed a charge with the Equal Employment Opportunity Commission on Jackson's behalf.  Dkt. 7-1 (EEOC Charge) at 1. Jackson received a Notice of Right to Sue letter from the EEOC on October 28, 2019 and filed suit against Omniplex on January 27, 2020, alleging violations of Title VII and the ADEA. Compl. ¶¶ 1, 7–8.

## II. LEGAL STANDARD

A motion to dismiss Title VII or ADEA claims—including for failure to exhaust administrative remedies—is properly analyzed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Klotzbach-Piper v. Nat'l R.R. Passenger Corp.*, 373 F. Supp. 3d 174, 181 (D.D.C. 2019).  Under Rule 12(b)(6), a party may move to dismiss for failure to state a claim upon which relief can be granted.  Fed. Civ. P. 12(b)(6).  To survive a motion to dismiss, a

complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although "detailed factual allegations" are not required, a plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *id.*, and must "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 545. To state a facially plausible claim, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard does not amount to a "probability requirement," but it does require more than a "sheer possibility that a defendant has acted unlawfully." *Id.* A complaint alleging "facts [that] are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When evaluating a Rule 12(b)(6) motion, the court "must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). Conclusory allegations, however, are not entitled to an assumption of truth, and even allegations pleaded with factual support need only be accepted insofar as "they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 678–79. In determining whether a complaint states a claim, the court can consider the allegations within the four corners of the complaint as well as "any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). A Rule 12(b)(6) dismissal

"is a resolution on the merits and is ordinarily prejudicial."  *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992).

## III. ANALYSIS

Title VII and the ADEA both require that plaintiffs exhaust their administrative remedies by initiating timely proceedings with the relevant local, state, or federal agency.  *See Klotzbach-Piper*, 373 F. Supp. 3d at 183.  In the District of Columbia, plaintiffs may exhaust their administrative remedies through either the EEOC or the D.C. Office of Human Rights.  *See Adams v. District of Columbia*, 740 F. Supp. 2d 173, 186–87 (D.D.C. 2010).  Where, as here, a prospective plaintiff files an administrative charge with the D.C. Office of Human Rights, the charge must be filed within 300 days of the discriminatory act giving rise to the claim.  *See* 42 U.S.C. § 2000e-5(e)(1) (Title VII "charge shall be filed [with an authorized state agency] by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred"); 29 U.S.C. § 626(d)(1)(B) (ADEA charge filed with a state agency "shall be filed . . . within 300 days after the alleged unlawful practice occurred").  These timeliness requirements "giv[e] the charged party notice of the claim and narrow[] the issues for prompt adjudication and decision," *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (internal quotation marks and alteration omitted), and "ensure that the federal courts are burdened only when reasonably necessary," *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985).

### A.  Timeliness of Jackson's Charge

On February 25, 2016, Jackson notified the D.C. Office of Human Rights of the facts underlying her discrimination and hostile work environment claims by submitting an intake

questionnaire.  *See* Questionnaire at 2–3.[2]   An agency questionnaire is a "charge" for statute of

limitations purposes, if it contains "an allegation and the name of the charged party" and can be

"reasonably construed as a request for the agency to take remedial action."  *Fed. Express Corp.*

*v. Holowecki*, 552 U.S. 389, 402 (2008).  Jackson's questionnaire meets this standard.  It not

only names the allegations and the parties, but also narrates the incident in depth for two pages,

asks the agency to investigate, and calls itself a "charge of discrimination."  *See* Questionnaire.

Therefore, for Jackson's administrative charge of discrimination to be timely, the events giving

rise to it must have occurred no earlier than May 1, 2015—which is 300 days before Jackson

notified the D.C. Office of Human Rights of her claims.  Because all of the allegedly

discriminatory actions that form the basis of Jackson's claims occurred before May 1, 2015, her

claims are untimely.

     With respect to Jackson's sex and age discrimination claims, "[t]he proper focus [of the

timeliness inquiry] is upon the time of the *discriminatory acts*, not upon the time at which the

*consequences* of the acts became most painful" to the plaintiff.  *Del. State Coll. v. Ricks*, 449

U.S. 250, 258 (1980) (internal quotation omitted) (emphasis in original).  As a result, the

limitations period begins "at the time the [] decision was made and communicated" to the

plaintiff, regardless of whether "one of the *effects* of" the decision occurred later.  *Id*. (emphasis

in original).  Thus, the appropriate benchmark for calculating the timeliness of Jackson's

discrimination claims is March 20, 2015, the date on which she was informed that she was

---

[2] Documents from the EEOC and D.C. Office of Human Rights are judicially noticeable and may be considered in resolving a defendant's motion to dismiss without converting it into a motion for summary judgment.  *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (considering "the pleadings and undisputed documents in the record" on a motion to dismiss); *Vasser v. McDonald*, 228 F. Supp. 3d 1, 11 (D.D.C. 2016) (taking judicial notice of informal and formal administrative complaints on a motion to dismiss).

indefinitely suspended.  To the extent that Jackson "continued to suffer damages and harm day-to-day while she awaited a notification . . . that [Omniplex] had completed its investigation," Dkt. 9 (Pl.'s Mem. in Opp'n) at 6, such angst was merely a "delayed, but inevitable, consequence[]" of the suspension itself, *Ricks*, 449 U.S. 250 at 257–58.  Although Jackson did not find out that she had been terminated until roughly two weeks after her suspension, that clarification of her employment status did not buy her any additional time to file her administrative charge.  *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990) (limitations period for ADEA claim began when adverse action was first communicated to plaintiff—even though the communication was allegedly ambiguous—rather than two weeks later when supervisor clarified plaintiff's status).

      Other federal courts have interpreted Title VII's timeliness requirement in this same way.  In *Washburn v. Sauer-Sundstrand, Inc.*, for instance, a machinist was allegedly informed that he was indefinitely suspended in August, but only learned that he had been permanently discharged in March—the latter date falling within the 300-day period.  *Washburn v. Sauer-Sundstrand, Inc.*, 909 F. Supp. 554, 558 (N.D. Ill. 1995).  The district court dismissed the suit as time-barred, because "there is only one challenged employment decision" and "nothing in th[e] record to suggest that [the plaintiff] could reasonably have regarded a discharge as discriminatory but an indefinite suspension as non-discriminatory."  *Id.* at 559.  What matters for timeliness purposes is the plaintiff's notice of the adverse action, not the label used for that action; in other words, "it is immaterial whether the adverse employment decision . . . was communicated to [the plaintiff] in terms of discharge or indefinite suspension."  *Id.  See also Mattice v. Mem'l Hosp. of South Bend*, No. 3:98-CV-303RM, 1999 WL 637983, at *4–5 (N.D. Ind. Mar. 1, 1999) (adverse action occurred when plaintiff first learned of summary suspension, not when he later learned of his

continued suspension). The same holds true here. The limitations period for Jackson's sex and age discrimination claims began on March 20, 2015, the date that Jackson was informed that she was indefinitely suspended.

In an effort to bring her discrimination claims within the 300-day limitations period, Jackson describes her indefinite suspension and her ultimate termination as two components of a single "continuing violation." Pl.'s Mem. in Opp'n at 5–6. This argument fails. Both of Jackson's discrimination claims depend on a discrete discriminatory act. "[D]iscrete discriminatory acts," like "termination . . . or refusal to hire," start a new clock for the filing of charges and do not constitute a continuing violation. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–14 (2002); *see also Nash v. City of Houston*, No. H-4:09-CV-1010, 2009 WL 10694634, at *2 (S.D. Tex. 2009) (indefinite suspension is not a continuing violation, but rather a discrete adverse action that triggers the statute of limitations). Moreover, a continuing violation must be "clearly asserted both in the EEOC filing and in the complaint," or else it is waived. *See Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 25 (2d Cir. 1985).

Omniplex and Jackson dispute the timing of the discrimination—whether it occurred on March 20, 2015, when Jackson was informed of her indefinite suspension, or at a later date, when she discovered she had been terminated. But even Jackson's own EEOC charge confirms that the alleged discrimination took place in the form of one discrete employment action. Indeed, she explicitly stated in her EEOC charge that the "discrimination took place" on March 18 at the earliest and March 19 at the latest; what is more, she specifically left the box for "continuing action" unchecked. EEOC Charge at 1.

Likewise, Jackson's alleged hostile work environment claim cannot constitute a "continuing violation" extending past May 1, 2015. A plaintiff may claim a continuing violation

when "the fact of the violation becomes apparent only by dint of the cumulative effect of repeated conduct." *Earle v. District of Columbia*, 707 F.3d 299, 306 (D.C. Cir. 2012). Here, Jackson alleges that she experienced a hostile work environment "when her co-workers subjected her to abusive, hostile, and offensive comments on the basis of her gender; when her co-workers physically surrounded and threatened Plaintiff; and when her co-workers falsely accused Plaintiff of lying." Compl. ¶ 48. Her hostile work environment claim thus materialized in mid-March, when she experienced the harassing conduct, and it concluded when her supervisor indefinitely suspended her on March 20, 2015.

But even if Jackson were correct that the 300-day limitations period did not commence until she discovered that she had officially been terminated, her charge would still be untimely. Although Jackson never received a termination letter from Omniplex, she "later learned that [she] had been terminated after she applied for unemployment benefits." Compl. ¶¶ 34–36. According to Jackson's sworn interview before the D.C. Office of Human Rights, she filed for unemployment "a week or week and a half" after her suspension. *See* Dkt. 11-1 (D.C. Office of Human Rights Interview) at 2.[3] As a result, the complaint implies that Jackson learned of her firing for sure within two weeks of March 20. *See* Compl. ¶¶ 35–36. Jackson's choice to file for unemployment benefits within two weeks of her suspension confirms that she understood that Omniplex had effectively terminated her in March 2015. *See Cada*, 920 F.2d at 453 (plaintiff's action of picking up severance forms proves notice of termination). At the latest, Jackson

---

[3] The Court can take judicial notice of "undisputed documents in the record," such as the interview transcript, "especially for background information such as dates of filings." *Vasser*, 228 F. Supp. 3d at 9–10. *See also Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1205 (N.D. Cal. 2014) (taking judicial notice of two undisputed interviews on a motion to dismiss); *S.E.C. v. Goldstone*, 952 F. Supp. 2d 1060, 1219 (D.N.M. 2013) (noticing—on a motion to dismiss—an interview of unchallenged authenticity).

learned of her firing on April 2, 2015—still more than 300 days before she filed her charge with the D.C. Office of Human Rights.

### B.  Equitable Tolling

Jackson argues, alternatively, that even if her claims are time-barred, the Court should equitably toll the relevant limitations periods and allow her claims to proceed.  "Equitable tolling is an extraordinary remedy that courts apply sparingly." *Jackson v. Spencer*, 313 F. Supp. 3d 302, 310 (D.D.C. 2018), *aff'd*, *Jackson v. Modly*, 949 F.3d 763 (D.C. Cir. 2020).  For equitable tolling to apply, the plaintiff bears the burden of establishing that (1) despite all due diligence, (2) some extraordinary circumstance caused delay.  *See Oviedo v. Wash. Metro. Area Transit Auth.*, 948 F.3d 386, 393–94 (D.C. Cir. 2020).  For instance, tolling may be appropriate if the pled facts show that the employer actively misled the plaintiff or that unusual events caused the plaintiff to assert rights in the wrong forum.  *See Miller*, 755 F.2d at 24.  There is no basis to grant equitable tolling here.  Nothing in the record indicates that Jackson faced any obstacles during the ten months that she waited to file her claim, let alone that any extraordinary circumstances caused her delay.  The Court therefore will not equitably toll the limitations periods for Jackson's claims.  Accordingly, it is

**ORDERED** that the defendant's Motion to Dismiss, Dkt. 7, is **GRANTED**.  It is further

**ORDERED** that this action is **DISMISSED**.

The Clerk of Court is directed to close this case.

DABNEY L. FRIEDRICH
United States District Judge

July 2, 2020

9